IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE CO., et al.** | * | |
| | * | |
|     **Plaintiffs,** | * | |
| | * | |
| v. | * | **Civil No. JKS 14-1615** |
| | * | |
| **LIVINGSTON FIRE PROTECTION, INC.** | * | |
| | * | |
|     **Defendant/Third Party Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| **NAZARIO, LLC,** | * | |
| | * | |
|     **Third Party Defendant.** | * | |

**MEMORANDUM OPINION**

Presently pending is Third Party Defendant, Nazario, LLC's, Motion for Summary Judgment. ECF No. 39. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Nazario's motion will be granted in part and denied in part.

**1. Factual Background.**

The following facts are either undisputed or are construed in the light most favorable to Defendant, Livingston Fire Protection, Inc., the non-moving party.

On July 15, 2013, the fire protection sprinkler system located at 6311 Ammendale Road, Beltsville, Maryland, discharged resulting in water damage to tenant Arbee Associates. ECF No. 34 at ¶ 10. Plaintiff, Hartford Fire Insurance Company, which insured Arbee Associates, paid Arbee for the water damage. *Id.* at ¶ 3, 12.

Arbee Associates leased the premises from Nazario, which contracted with Livingston to perform annual inspections, maintenance and repair work on the fire protection system from

2004 through 2013.  ECF No. 39-4 at 3.  On August 15, 2011, Livingston conducted the inspection relevant to this dispute.  ECF No. 43-7.  The inspection report noted missing fire department connection screw caps for test headers, items that were deemed not relevant to the water damage.  *Id.*  The inspection report did not note any problem with leaky pipes or water discharge outside the building.  *Id.*

On August 23, 2011, eight days after the inspection, a Livingston service technician, Robert Illig, responded to a telephone call from Arbee Associates concerning a water leak from the building adjacent to Arbee's office.  ECF 39-10 at 4; ECF No. 39-15.  Mr. Illig visited the property on August 25, 2011 and "[removed a] relief valve and plugged the connection."  ECF 39-10 at 4.  Neither Mr. Illig nor anyone at Livingston told Nazario about this service call, even though such repairs ordinarily require Nazario's prior approval.  ECF No. 39-10 at 4; ECF No. 39-7 at 10.  According to Livingston's president, Richard Kozel, removing and plugging a relief valve should have been reflected on a work order and invoice, although occasionally service work is not billed.  ECF No. 39-6 at 6.

Two years later, on July 15, 2013, excessive pressure in the fire protection system caused a cap to separate from a sprinkler, resulting in the subject water damage.  ECF No. 39-2 at 2.  Plaintiffs filed a complaint against Livingston on May 17, 2014, ECF No. 1, which was later amended on December 24, 2014, ECF No. 34, alleging that Livingston negligently inspected the fire protection sprinkler system in 2011 by failing to maintain necessary pressure relief valves in the sprinkler system.  ECF No. 34 at 4.  On September 2, 2014, Livingston filed a three count third party complaint against Nazario, ECF No. 18, alleging, *inter alia*, that it was Nazario's responsibility to safely maintain the fire safety system and that, regardless, Livingston's contract with Nazario contained hold harmless and indemnification provisions that protected Livingston

against Plaintiffs' claims. Nazario moved for summary judgment on July 21, 2015. ECF No. 39. Livingston's opposition concedes that Counts I and II should be dismissed, but opposes the motion with regard to Count III, the contractual indemnification claim. ECF No. 43 at 2.

2. **Standard of Review.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 343, 347 (1986). "For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation." *Nero v. Baltimore Cnty., MD*, 512 F. Supp. 2d 407, 409 (D. Md. 2007) (citing *Anderson*, 477 U.S. at 248). "Summary judgment is also appropriate when a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *Bertrand v. Children's Home*, 489 F. Supp. 2d 516, 518 (D. Md. 2007) (citing Fed. R. Civ. P. 56(e)). "The facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the

nonmoving party." *Id.* at 518-19 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "The court, however, cannot rely upon unsupported speculation and it has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 519 (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

3. **Discussion.**

   A. **Counts I and II.**

   Livingston concedes that Nazario is entitled to summary judgment as to Count I, common law indemnification, and Count II, common law contribution. Accordingly, judgment will be entered in favor of Nazario and against Livingston as to these two counts.

   B. **Count III – Contractual Indemnification.**

      1. **Routine Inspection vs. Separate Repair.**

      Livingston's contractual indemnification claim arises out of an inspection agreement executed between Livingston and Nazario in 2008. ECF No. 39-5. The agreement states that "[Livingston] shall inspect and/or test the equipment described herein in accordance with applicable codes," but that "[t]his Agreement does not include any repair or maintenance work on the systems inspected" and that "[a]ny repair or maintenance work shall be performed only pursuant to a separate Agreement." *Id.* Thus, the first issue is whether the allegedly negligent conduct here was part of an inspection or was a repair. If the conduct arose from an inspection, Livingston may be able to avoid liability under the indemnification clause contained in the Agreement; if the conduct arose from a repair, Livingston cannot use this indemnification clause to shield itself from liability.

      Nazario argues that the work that caused the water damage involved a repair job on

August 25, 2011, which was separate from Livingston's annual inspection on August 15, 2011. ECF No. 39-17 at 5.  Nazario contends that the repair could not have been part of the inspection process because the reason for the repair, i.e., water discharge and leaky pipes, was not documented on the inspection report.  ECF No. 39-17 at 6.  Timothy Beck, Livingston's service and inspection manager, testified that each time an inspection uncovered a need for anything other than a minor repair, a notation was made on the inspection report and a subsequent work order was approved by Nazario and invoiced separately.  ECF No. 39-7 at 4, 9.  For example, on August 23, 2012, after a work order was issued and Nazario authorized Livingston to perform the work, Livingston installed six plastic caps for valves on the test header and billed Nazario $1,386 for this work.  ECF No. 39-7 at 6-7; ECF No. 39-13 at 4; ECF No. 39-14.  Here, however, Nazario was never informed of the work, never authorized the work, and was never billed for the work.

Livingston claims that the August 25th service was a follow-up to the August 15th inspection and not a repair.  Livingston's evidence shows that, on August 23, 2011, an employee at Arbee Associates called Livingston concerning a water leak from the building adjacent to Arbee's offices.  ECF No. 43-11 at 5.  Mr. Illig fielded this phone call and filled out a form documenting the request for service, but an official work order was never issued.  ECF No. 43-12.  Mr. Illig thereafter traveled to the premises and addressed the issue by removing a relief valve and plugging the connection.  ECF No. 43-11 at 4-5.  Livingston claims that this service was part of the inspection because it did not produce a separate work order and did not charge Nazario for the service, as is customary with repair jobs.  *Id.*  Mr. Illig, when asked why he did not submit a bill for this service, explained that "[i]t was a follow-up to a previous inspection, and I assumed it was something we could do without sending a bill."  ECF No. 39-10 at 4-5;

ECF No. 43-11 at 5-6.  As noted, Timothy Beck confirmed that requests for repairs are billed separately from annual inspections and that a stand-alone repair job is typically paired with a work order and an invoice.

Livingston's evidence, while far from convincing, creates a genuine issue of material fact regarding whether this particular work was part of the inspection process or was a separate repair.  On the one hand, the inspection report itself did not unveil any issues with leaky pipes or faulty sprinkler heads, which indicates that this repair was not connected with the inspection.  ECF No. 43-7.  However, Mr. Illig's testimony that this service appointment "was a follow-up to a previous inspection," while self-serving, nevertheless provides evidence that it was part of the inspection.  The fact that a separate work order was not produced cuts both ways.  From Nazario's standpoint, because inspections are pre-approved, this could not have been part of an inspection because it was done without Nazario's knowledge.  ECF No. 46 at 4.  From Livingston's standpoint, repairs that are not part of an inspection are accompanied by a separate work order, therefore, the lack of a work order indicates it was part of the inspection.  Summary judgment must be denied as a material factual dispute exists as to this issue.

### 2. Applicability of the Indemnification Clause.

There is an alternative reason why summary judgment cannot be granted in this case.  Even if the Agreement is applicable, a question would still exist regarding whether the Agreement indemnifies Livingston from the liability alleged here.  The Agreement's Limitation of Liability clause consists of two sentences that are relevant to this dispute:

> [First Sentence:]  [Nazario] shall hold [Livingston] harmless from any and all third party claims for personal injury, death or property damage, arising from [Nazario's] failure to maintain these systems or keep them in operative condition, whether based upon contract, warrant, tort, strict liability or otherwise.
>
> [Second Sentence:]  In no event shall [Livingston] be liable for any special,

> indirect, incidental, consequential or liquidated, penal or any economic loss damages of any character, including but not limited to loss of use of [Nazario's] property, lost profits or lost production, whether claimed by [Nazario] or by any third party, irrespective of whether claims or actions for such damages are based upon contract, warranty, negligence, tort, strict liability or otherwise.

ECF No. 39-5.

Nazario, focusing solely on the first sentence, argues that Livingston cannot avoid liability because that sentence only applies when *Nazario's* conduct causes the relevant harm, whereas here, it was *Livingston's* conduct that allegedly caused the water damage. ECF No. 46 at 5. Livingston disputes Nazario's reading of the first sentence but argues that, regardless, the second sentence explicitly states that Livingston shall not be held liable for "any economic loss damages of any character," "whether claimed by [Nazario] or by any third party." ECF No. 43-1 at 8; ECF No. 39-5. Nazario has failed to rebut or otherwise address this assertion, other than to argue that immunity from liability for one's own negligence must be plainly expressed. ECF No. 46 at 6-7. For this alternative reason, summary judgment is not appropriate.

### 3. **Conclusion.**

The Court will grant Nazario's motion for summary judgment as to Counts I and II and will deny Nazario's motion as to Count III.

Date: September 21, 2015                                        /S/
                                                    Jillyn K. Schulze
                                                 United States Magistrate Judge